IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.: 1:10-cr-7-SPM/AK

LUIS FERRO-LORENZO, et al.,

    Defendants.
_____/

## ORDER DENYING MOTIONS TO SUPPRESS

This cause comes before the court on Defendant Ferro Lorenzo's Motion to Suppress Evidence and Statements (doc. 66), Defendant Victor Rodriguez-Paz's Motion to Suppress (doc. 68) and the Government's Responses in Opposition (docs. 67, 71). A suppression hearing was held on August 24, 2010. After the hearing, the Defendants filed memoranda in support of the Motions to Suppress (docs. 85, 86) and the Government filed another Response in Opposition (doc. 81). For the reasons expressed herein, the Motions to Suppress will be denied.

## BACKGROUND

Drug Enforcement Agent Wayne Andrews conducted a proffer of William Diaz, a defendant in an unrelated case seeking to provide substantial assistance in the prosecution of others, who informed Andrews that his cellmate, Luis

Manuel Cancio-Carmona, was an associate of Defendant Ferro-Lorenzo, and that Cancio-Carmona had confided to him that Defendant Ferro-Lorenzo was operating an indoor marijuana grow operation near the intersection of I-75 and Archer Road. Diaz also told Andrews that there was a mobile home on the property, marijuana was grown in the barn, and there was no washer and dryer on the property. Information that Diaz provided the Drug Enforcement Agency regarding a marijuana grow operation at another location proved to be accurate.

Agent Andrews looked up the property records for Defendant Ferro-Lorenzo. No barn was listed on the property records of the approximately 10 acre parcel. On January 13, 2010, law enforcement officers associated with the Drug Enforcement Agency arrived at the property for the purpose of conducting a knock and talk. Agent Andrews and Agent Hunter approached from the south of the property on foot, while two other DEA agents drove up to the front gate.

Agents Andrews and Hunter entered onto Defendant Ferro-Lorenzo's property from the adjacent property to the south, crossing over a collapsed wire-woven exterior fence. As they approached the back of the mobile home, they traversed a large wooded area. About 80 yards from the mobile home, Agent Andrews detected the odor of raw marijuana. About 50 to 80 yards from the mobile home, Agent Andrews heard an air conditioning unit, which he found unusual because it was winter. He then witnessed people going from the mobile home to the barn. About 50 to 75 yards from the mobile home, Agent Andrews

noticed potting soil and pots behind the barn.

As Agents Andrews and Hunter were approaching the mobile home from the wooded area, the DEA agents at the front of the home blew the horn of the vehicle in an effort to alert those present at the residence that they wanted to conduct a knock and talk. When Defendant Ferro-Lorenzo exited the front door of the mobile home, the DEA agents identified themselves as law enforcement and asked to speak to him. Defendant Ferro-Lorenzo told them to wait while he went back into the mobile home to retrieve the key for the front gate.

Agents Andrews and Hunter then observed three persons, including both Defendants, flee from the mobile home, climb an interior fence which surrounded an area of the property near the mobile home and barn, and head southward. Once Defendant Rodriguez-Paz crossed the interior fence, Agent Andrews noticed that the kept reaching into his back pocket, where marijuana was later discovered. Defendant Rodriguez-Paz had marijuana stains on his clothes and smelled strongly of marijuana. As Defendant Ferro-Lorenzo was crossing over the fence, Agents Andrews and Hunter identified themselves as law enforcement agents. Defendant Ferro-Lorenzo then climbed back over the fence, as the other DEA agents approached from the north, ultimately detaining him. Agents Andrews and Hunter detained Defendant Rodriguez-Paz about 80 yards south of the mobile home.

While the Defendants were detained, Agent Hunter sought and obtained a

search warrant. Marijuana, growing equipment, and other evidence was seized from the property. At Defendant Ferro-Lorenzo's initial appearance the following day, when asked by the Magistrate Judge whether he understood the charges against him, he replied in Spanish, "I was the grower."

## DISCUSSION

### A.     Curtilage

With limited exception, the Fourth Amendment requires a warrant before the Government can conduct a search of "persons, houses, papers, and effects." U.S. Const. amend. IV; Oliver v. United States, 466 U.S. 170, 176 (1984). While a person's house lies squarely within the protection of the Fourth Amendment, the surrounding land might not. Id. The expectation of privacy that society is prepared to recognize extends from the home only to land that is within the curtilage area. Id. Activities conducted beyond its borders are not within the expectation of privacy that attaches to the home. Id. at 180.

Curtilage is the area around the home that "harbors those intimate activities associated with domestic life and the privacies of home." United States v. Dunn, 480 U.S. 294, 300 (1987). This is in contrast to "open fields," which include all undeveloped or unoccupied areas outside of the curtilage even if those areas are neither open nor fields as those terms are commonly understood. Id. at 304. Accordingly, heavily wooded areas can qualify as open fields. Id. Open fields are regarded for Fourth Amendment purposes as

tantamount to public places.  Id.   Steps taken to establish a zone of privacy in an open field may create a subjective expectation of privacy, but it is not an interest recognized by society as protected under the Fourth Amendment. Oliver, 466 U.S. at 182.

Open fields can be accessed and searched by law enforcement without a warrant, even though the land is secluded, fenced, and posted to keep out trespassers.  Oliver, 466 U.S. at 182.  "The law of trespass recognizes the interest in possession and control of one's property and for that reason permits exclusion of unwanted intruders.  But it does not follow that the right to exclude conferred by trespass law embodies a privacy interest also protected by the Fourth Amendment." Id. at 184 n.15.  "[T]respass law extends to instances where the exercise of the right to exclude vindicates no legitimate privacy interest." Id. at 183.

In the present case, Agents Hunter and Andrews entered onto Defendant Ferro-Lorenzo's property from a neighboring property through an open field. Although the property was surrounded by a perimeter fence, which was collapsed in the area that Agents entered the property, no intimate activities of domestic life were enjoyed in the wooded portion of the property south of the mobile home and interior fence. Accordingly, the Defendants had no legitimate expectation of privacy in this location, and the entry of Agents Hunter and Andrews onto this area of the Property did not implicate the Fourth Amendment.

**B.     Knock and Talk**

It is well-established that "[t]he Fourth Amendment . . . is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises." United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006). "'[O]fficers are allowed to knock on a residence's door or otherwise approach a residence seeking to speak to the inhabitants just as any private citizen may.'" Id. (quoting Estate of Smith v. Marasco, 318 F.3d 497, 519 (3d Cir. 2003)). Their approach is not restricted to the front door. If it appears that someone is in or around a house, officers may take reasonable steps to initiate contact by going to other areas of the property. Taylor, 458 F.3d at 1204-05 (officers could move away from front door to talk to person coming from barn); Hardesty v. Hamburg Twp., 461 F.3d 646, 654 (6th Cir. 2006) (officers could go to back yard or back door to speak to occupant believed to be home).

As Agents Hunter and Andrews entered Defendant Ferro-Lorenzo's property from the south, other agents drove to the front gate for the purpose of conducting a knock and talk. Rather than entering the property, the agents blew the horn, identified themselves, and asked to speak to Defendant Ferro-Lorenzo. At Defendant Ferro-Lorenzo's instruction, they waited in the car at the gate while Defendant Ferro-Lorenzo entered the mobile home, ostensibly for the purpose of retrieving his keys. The agents made no effort to enter upon the property without

permission prior to the headlong flight of three persons from the rear of the mobile home. Accordingly, the intended knock and talk did not occasion a Fourth Amendment violation.

**C.     Detainment and Arrest**

Law enforcement officers may stop an individual when they possess reasonable suspicion of his involvement in criminal conduct. "[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." Illinois v. Wardlow, 528 U.S. 119, 125 (2000). In addition to having observed the Defendants' headlong flight from the rear of the mobile home, DEA agents detected the odor of marijuana, heard the air conditioning unit running despite the cold weather, saw the potting soil, observed marijuana stains on the clothing of Defendant Rodriguez-Paz, and witnessed Defendant Rodriguez-Paz continually reach into his pocket whilst in flight. Upon consideration of all of these observations, it is clear that the agents had reasonable suspicion to detain the Defendants.

Defendant Rodriguez-Paz was detained in the open field of the property to the south of the interior fence. As discussed above, the Defendants possessed no legitimate expectation of privacy in this area, and the agents' entry onto the open field did not implicate the Fourth Amendment. Once Defendant Ferro-Lorenzo became aware of the officer's presence in the open field, he crossed back over the interior fence toward the rear of the mobile home, and was

apprehended by the agents who had been stationed at the front of the property for the purpose of conducting a knock and talk. Although the agents entered the front of the property, crossing over the front gate and passing the mobile home in order to apprehend Defendant Ferro-Lorenzo, there was no Fourth Amendment violation, as exigent circumstances, including the risk of flight of Defendant Ferro-Lorenzo, the threat of destruction of evidence, and the potential for harm and violence against the officers to the rear of the mobile home, necessitated the entry onto private property in order to apprehend Defendant Ferro-Lorenzo, whose arrest was supported by probable cause. See United States v. Santana, 427 U.S. 38 (1976); Parker v. Allen, 565 F.3d 1258 (11th Cir. 2009).

While the Defendants were detained, Agent Andrews applied for and obtained a search warrant, which was supported by probable cause, pursuant to his investigation and all of the observations at the property. Upon execution of the warrant, marijuana and other evidence of criminal activity were discovered in the mobile home and barn. This evidence provided sufficient probable cause to support the Defendants' arrest.

**D.    Search Warrant**

Defendants also object to the sufficiency and veracity of the affidavit of Agent Andrews in support of the application for search warrant. To prevail on this *Franks* challenge, Defendants must show two things: first that misstatements or omissions in the probable cause affidavit were intentional or reckless; and

second that they were material to a proper determination of probable cause. United States v. Burston, 159 F.3d 1328, 1333 (11th Cir. 1998). Defendants can show neither. The affidavit did not omit any material information, and any misstatements or omissions were inadvertent and insignificant. The Magistrate Judge had ample probable cause for the issuance of the search warrant.

E.      Statements

Both Defendants challenge statements made incident to their arrests. As expressed above, the arrests were lawful. Additionally, no evidence was presented at the suppression hearing tending to show that any statement upon arrest was not voluntarily made. Therefore, the statements are not subject to exclusion on the basis of unlawful arrest or voluntariness.

Additionally, Defendant Ferro-Lorenzo has moved to suppress a statement, made at his initial appearance, that he was the grower. At the initial appearance, throughout which the Defendant was assisted by an interpreter, the Defendant was advised of his right not to make a statement and that any statement may be used against him, pursuant to Federal Rule of Criminal Procedure 5(d)(1)(E), and apprised of the charges against him. The Defendant was previously advised of his *Miranda* rights upon his arrest. When Magistrate Judge Allan Kornblum asked the Defendant whether he understood the charges, he replied in Spanish, "I am the grower." Contrary to Defendant Ferro-Lorenzo's assertion, the Magistrate Judge's questioning was not improvident. The

Defendant was made aware of his rights, was assisted by counsel and an interpreter at the initial appearance, and was not threatened, cajoled, or manipulated by the Magistrate Judge or anyone present at the initial appearance to make such an admission. Defendant Ferro-Lorenzo's statement was voluntary and he made a knowing and intelligent waiver of his *Miranda* rights. The Defendant's voluntary admission is not transformed into compelled speech merely because the statement was made in court, or because the Defendant was asked standard questions by the Magistrate Judge, relevant to his understanding of the charges against him, at the initial appearance. See Minnesota v. Murphy, 465 U.S. 420, 427 (1984) ("[T]he general obligation to appear and answer questions truthfully did not in itself convert [defendant's] otherwise voluntary statements into compelled ones."). In consideration of all the factors enumerated in 18 U.S.C. § 3501(b) and the totality of the circumstances, the Court finds that Defendant Ferro-Lorenzo's incriminating statement was voluntarily made. Federal Rule of Criminal Procedure 17.1 sets forth procedures for the admissibility of statements made at optional pretrial conferences, which are trial proceedings distinct from required initial appearances, as provided for in Federal Rule of Criminal Procedure 5, and is therefore inapplicable to the facts and circumstances of this case. Moreover, to interpret the requirements of Rule 17.1 to apply to initial appearances would render the advice required by Rule 5(d)(1)(E) unnecessary and ineffectual.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED AND ADJUDGED that Defendants' Motions to Suppress Evidence (docs. 66, 68) are *denied*.

DONE AND ORDERED this <u>seventh</u> day of October, 2010.

      *s/ Stephan P. Mickle*
Stephan P. Mickle
Chief United States District Judge